IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

| | |
|---|---|
| **JENNIFER SALMONS,** | ) |
| **Plaintiff,** | ) |
| v. | ) Civil Action No. 3:18-01475 |
| **WESTERN REGIONAL JAIL,** *et al.*, | ) |
| **Defendants.** | ) |

**PROPOSED FINDINGS AND RECOMMENDATION**

Pending before the Court is Defendants Richardson, Dillon, and Young's Motion to Dismiss Complaint and Alternative Motion for Summary Judgment (Document No. 42), filed on November 1, 2019. The Court notified Plaintiff pursuant to Roseboro v. Garrison, 528 F.2d 304 (4th Cir. 1975), that Plaintiff had the right to file a response to Defendants' Motion and submit Affidavit(s) or statements and/or other legal or factual material supporting her claims as they are challenged by the Defendants in moving to dismiss. (Document No. 44.) Plaintiff filed her Response in Opposition on December 11, 2019. (Document No. 47.) Having examined the record and considered the applicable law, the undersigned has concluded that the Defendants' above Motion should be granted.

**FACTUAL BACKGROUND**

On November 29, 2018, Plaintiff, acting *pro se*, filed a Complaint seeking relief for alleged violations of her constitutional and civil rights pursuant to 42 U.S.C. § 1983.[1] (Document No. 1.) By Order entered on November 30, 2018, United States Magistrate Judge Cheryl A. Eifert directed

---

[1] Because Plaintiff is acting *pro se*, the documents which she has filed in this case are held to a less stringent standard than if they were prepared by a lawyer and therefore, they are construed liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

Plaintiff to (1) either pay the $400 administrative and filing fee or file an Application to Proceed *in forma pauperis*, and (2) amend her Complaint to cure the noted deficiencies. (Document No. 3.) On January 14, 2019, Plaintiff filed her Application to Proceed *in forma pauperis*. (Document No. 11.) By Order entered on January 16, 2019, Judge Eifert granted Plaintiff an extension of time to file her Amended Complaint and granted Plaintiff's Application to Proceed *in forma pauperis*. (Document 14.)

On March 8, 2019, Plaintiff filed her Amended Complaint. (Document No. 17.) Plaintiff named the following as Defendants: (1) Western Regional Jail; (2) Nurse Shannon; (3) Nurse Kendra; and (4) Nurse Steven. (Id.) Plaintiff alleges that she was incarcerated at the Western Regional Jail ["WRJ"] from April 27, 2018, until November 19, 2018. (Id.) Plaintiff claims that she contracted the Hepatitis A virus during her incarceration at WRJ. (Id.) Plaintiff states that she contracted the Hepatitis A from her cellmate. (Id.) Plaintiff alleges that although medical staff were aware that the other inmate had Hepatitis A, the inmate was placed in a cell with Plaintiff. (Id.) Plaintiff alleges that she reported to medical when she started exhibiting symptoms of Hepatitis A, and Nurse Shannon instructed her to complete a "sick call" form. (Id.) Plaintiff contends that she completed the "sick call" form and turned it in to medical the following morning. (Id.) Plaintiff complains she was not called medical that day, so she returned to medical that night and Nurse Kendra gave Plaintiff another "sick call" form to complete. (Id.) Plaintiff states that she completed the second "sick call" form and submitted it to medical the following morning. (Id.) Plaintiff alleges that by the third day, her symptoms were getting worse and she was "bright yellow." (Id.) Plaintiff explains that she again returned to medical and "showed Nurse Kendra my body and she told me I was fine and to once again to fill out a sick call." (Id.) Plaintiff states that she again completed a "sick-call" form, and the form was submitted on day four. (Id.) Plaintiff alleges that

2

on day five, she "started vomiting and having very bad abdomen pains, the whites of [her] eyes turned yellow, and [she] was so tired [she] couldn't get up out of bed; [she] had a fever and [her] urine was very dark." (Id.) Plaintiff alleges that she again went back to medical and "told Nurse Steven I had the symptoms of Hepatitis A virus, they told me I just had a sinus infection and he told me if I came back to the med cart he was going to write me up for refusing an order because there wasn't anything wrong with me; I just had a sinus infection." (Id.) Plaintiff states that when the nursing staff found out that Plaintiff had taken nursing classes, the head of the nursing staff came to see her. (Id.) Plaintiff contends that a "couple of days later," a nurse took her blood and Plaintiff was later informed that she tested positive for Hepatitis A. (Id.) Plaintiff alleges that on May 30, 2018, all inmates at the jail received a Hepatitis A shot. (Id.) Finally, Plaintiff complains of an incident where she was confused with another inmate with the same last name. (Id.) Plaintiff states that the other inmate was to be placed on suicide watch, and prison staff tried to place Plaintiff on suicide watch. (Id.) Plaintiff states that she informed prison staff there was a mix up and Plaintiff acknowledges she was not placed on suicide watch. (Id.)

By Order entered on May 14, 2019, Judge Eifert directed the Clerk to issue a summons on behalf of Plaintiff for the Western Regional Jail and the summons was issued the same day. (Document No. 18 and 19.) By Order entered on May 23, 2019, Judge Eifert directed the WRJ to identify the last names of the three nurses named as Defendants. (Document No. 21.) On June 11, 2019, WRJ responded to the Court's Order and identified the following: (1) Shannon Dillon; (2) Kendra Richardson; and (3) Steven Young. (Document No. 22.) By Order entered on June 12, 2019, Judge Eifert granted the amendment of Plaintiff's Complaint to include the above individuals and directed the Clerk to issue process. (Document No. 23.) By Order entered on October 22, 2019, the above matter was transferred to the undersigned for total pretrial

management and submission of proposed findings of facts and recommendation for disposition. (Document No. 39.)

Following the granting of an extension of time, Defendants Richardson, Dillon, and Young filed their Motion to Dismiss Complaint and Alternative Motion for Summary Judgment and Memorandum in Support. (Document Nos. 42 and 43). In their Motion, Defendants argue that Plaintiff's claims against them should be dismissed based on the following: (1) Plaintiff failed to state a claim upon which relief can be granted (Document No. 42 and Document No. 43, pp. 2 – 3.); (2) Plaintiff failed to exhaust her administrative remedies (Id., pp. 3 – 5.); (3) Plaintiff failed to comply with the Notice of Claim and Screening Certificate of Merit requirements of the MPLA (Id., pp. 5 – 8.); and (4) "Plaintiff's claims do not meet the legal threshold for a viable Eighth Amendment claim" (Id., pp. 8 – 10.). Notice pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), was issued to Plaintiff on November 4, 2019, advising her of the right to file a response to Defendants' Motion. (Document No. 44.) On December 11, 2019, Plaintiff filed her Response in Opposition. (Document No. 47.)

## THE STANDARD

### Motion to Dismiss

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 173 L.Ed.2d 868 (2009)(quoting Bell Atlantic Corporation v. Twombly, 550 U.S. 554, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it

4

has not 'show[n]' – 'that the pleader is entitled to relief." Id. at 556 U.S. at 679, 129 S.Ct. at 1950. The "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." Twombly, 550 U.S. at 555, 127 S.Ct. at 1959. Although factual allegations must be accepted as true for purposes of a motion to dismiss, this principle does not apply to legal conclusions. Id. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.

This Court is required to liberally construe *pro se* documents, holding them to a less stringent standard than those drafted by attorneys. Estelle v. Gamble, 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976); Loe v. Armistead, 582 F.2d 1291, 1295 (1978). Liberal construction, however, "does not require courts to construct arguments or theories for a *pro se* plaintiff because this would place a court in the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party." Miller v. Jack, 2007 WL 2050409, at * 3 (N.D.W.Va. 2007)(citing Gordon v. Leeke, 574 F.2d 1147, 1151 (4th Cir.1978)). Further, liberal construction does not require the "courts to conjure up questions never squarely presented to them." Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir. 1985). In other words, a court may not construct legal argument for a plaintiff. Small v. Endicott, 998 F.2d 411 (7th Cir.1993). Finally, the requirement of liberal construction does not mean that the Court can ignore a clear failure in the pleadings to allege facts which set forth a claim currently cognizable in a federal district court. Weller v. Department of Social Servs., 901 F.2d 387 (4th Cir.1990)). Where a *pro se* Complaint can be remedied by an amendment, however, the District Court may not dismiss the Complaint with prejudice, but must permit the amendment. Denton v. Hernandez, 504 U.S. 25, 34, 112 S.Ct. 1728, 1734, 118 L.Ed.2d 340 (1992); also see Goode v. Central Va. Legal Aide Society, Inc., 807 F.3d 619 (4th Cir. 2015).

**Summary Judgment**

Summary judgment is appropriate under Federal Rule of Civil Procedure 56 when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Once the moving party demonstrates the lack of evidence to support the non-moving party's claims, the non-moving party must go beyond the pleadings and make a sufficient showing of facts presenting a genuine issue for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 - 87, 106 S.Ct.1348, 89 L.Ed.2d 538 (1986). All inferences must be drawn from the underlying facts in the light most favorable to the non-moving party. Matsushita, 475 U.S. at 587, 106 S.Ct. at 1356. Summary judgment is required when a party fails to make a showing sufficient to establish an essential element of a claim, even if there are genuine factual issues proving other elements of the claim. Celotex, 477 U.S. at 322-23, 106 S.Ct. at 2552-53. Generally speaking, therefore, summary judgment will be granted unless a reasonable jury could return a verdict for the non-moving party on the evidence presented. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If no facts or inferences which can be drawn from the circumstances will support Plaintiff's claims, summary judgment is appropriate.

**DISCUSSION**

1.   **Section 1983 Claim:**

"[F]ederal courts must take cognizance of the valid constitutional claims of prison inmates." Turner v. Safley, 482 U.S. 78, 84, 107 S.Ct. 2254, 2259, 96 L.Ed.2d 64 (1987). Title 42 U.S.C. § 1983 provides a remedy for violations of all "rights, privileges, or immunities secured by the Constitution and laws [of the United States]." Thus, Section 1983 provides a "broad remedy for violations of federally protected civil rights." Monell v. Dep't of Social Services, 436 U.S. 658,

685, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Generally speaking, to state and prevail upon a claim under 42 U.S.C. § 1983, a Plaintiff must prove that (1) a person acting under color of State law (2) committed an act which deprived her of an alleged right, privilege or immunity protected by the Constitution or laws of the United States.

    A.    **<u>Failure to Exhaust:</u>**

The Prison Litigation Reform Act, 42 U.S.C. § 1997e(a)(1996), requires that inmates exhaust available administrative remedies prior to filing civil actions though the administrative process may not afford them the relief they might obtain through civil proceedings.[2] <u>Woodford v. Ngo</u>, 548 U.S. 81, 126 S.Ct. 2378, 2382-83, 165 L.Ed.2d 368 (2006); <u>Porter v. Nussle</u>, 534 U.S. 516, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002)(The Prison Litigation Reform Act's exhaustion requirement applies to all inmate suits about prison life whether they involve general circumstances or particular episodes and whether they allege excessive force or some other wrong.); <u>Booth v. Churner</u>, 532 U.S. 731, 121 S.Ct. 1819, 1820,149 L.Ed.2d 958 (2001)("Under 42 U.S.C. § 1997e(a), an inmate seeking only money damages must complete any prison administrative process capable of addressing the inmate's complaint and providing some form of relief, even if the process does not make specific provision for monetary relief."). Exhaustion of administrative remedies is also required when injunctive relief is requested. <u>Goist v. U.S. Bureau of Prisons</u>, 2002 WL 32079467, *4, fn.1 (D.S.C. Sep 25, 2002), *aff'd*, 54 Fed.Appx. 159 (4th Cir. 2003), *cert. denied*, 538 U.S. 1047, 123 S.Ct. 2111, 155 L.Ed.2d 1088 (2003). "[A] court may not

---

[2] 42 U.S.C. § 1997e(a) provides as follows:

> No action shall be brought with respect to prison conditions under section 1983 of this title or any other federal law, by a prisoner confined in any jail, prison, or other correction facility until such administrative remedies as are available are exhausted.

7

excuse a failure to exhaust" because the PLRA's mandatory exhaustion scheme "foreclose[es] judicial discretion." Ross v. Blake, ___ U.S. ___, 136 S.Ct. 1850, 1856-57, 195 L.Ed.2d 117 (2016)("[A] court may not excuse a failure to exhaust, even to take [special circumstances] into account."). But the plain language of the statute requires that only "available" administrative remedies be exhausted. Id. at 1855("A prisoner need not exhaust remedies if they are not 'available.'"); also see Dale v. Lappin, 376 F.3d 652, 656 (7th Cir. 2004); Mitchell v. Horn, 318 F.3d 523, 529 (3d Cir. 2003)(inmate lacked available administrative remedies for exhaustion purposes where inmate was unable to file a grievance because prison officials refused to provide him with the necessary grievance forms); Miller v. Norris, 247 F.3d 736, 740 (8th Cir. 2001)(allegations that prison officials failed to respond to his written requests for grievance forms were sufficient to raise an inference that inmate had exhausted his available administrative remedies.)

If an inmate exhausts administrative remedies with respect to some, but not all, of the claims she raises in a Section 1983, Bivens or FTCA action, the Court must dismiss the unexhausted claims and proceed with the exhausted ones. See Jones v. Bock, 549 U.S. 199, 127 S.Ct. 910, 913, 166 L.Ed.2d 798 (2007)("The PLRA does not require dismissal of the entire complaint when a prisoner has failed to exhaust some, but not all, of the claims included in the complaint. * * * If a complaint contains both good and bad claims, the court proceeds with the good and leaves the bad.") It appears to be the majority view as well that exhausting administrative remedies after a Complaint is filed will not save a case from dismissal. See Neal v. Goord, 267 F.3d 116, 121-22 (2d Cir. 2001)(*overruled on other grounds*), a Section 1983 action, citing numerous cases. The rationale is pragmatic. As the Court stated in Neal, allowing prisoner suits to proceed, so long as the inmate eventually fulfills the exhaustion requirement, undermines

Congress' directive to pursue administrative remedies prior to filing a complaint in federal court. Moreover, if during the pendency of a suit, the administrative process was to produce results benefitting plaintiff, the federal court would have wasted its resources adjudicating claims that could have been resolved within the prison grievance system at the outset. Neal, 267 F.3d at 123. In Freeman v. Francis, 196 F.3d 641, 645 (6th Cir. 1999), the Court stated: "The plain language of the statute [§ 1997e(a)] makes exhaustion a precondition to filing an action in federal Court.. . .The prisoner, therefore, may not exhaust administrative remedies during the pendency of the federal suit." Thus, the PLRA requires that available administrative remedies must be exhausted before the filing of a suit in Federal Court. It is further clear that the PLRA does not require that an inmate allege or demonstrate that she has exhausted her administrative remedies. See Jones v. Bock, supra; Anderson v. XYZ Correctional Health Services, 407 F.3d 674, 677 (4th Cir. 2005), *abrogated on other grounds by* Custis v. Davis, 851 F.3d 358 (4th Cir. 2017). Failure to exhaust administrative remedies is an affirmative defense. Prison officials have the burden of proving that the inmate had available remedies which he did not exhaust. Jones v. Bock, supra, 549 U.S. at 216, 127 S.Ct. at 921(Failure to exhaust is an affirmative defense that a defendant must generally plead and prove); also see Dale v. Lappin, 376 F.3d 652, 655 (7th Cir. 2004)("Although exhaustion of administrative remedies is a precondition to a federal prisoner filing a Bivens suit, [citations omitted] failure to exhaust is an affirmative defense that the defendants have the burden of pleading and proving." (Citations omitted)) The Court is not precluded, however, from considering at the outset whether an inmate has exhausted administrative remedies. "A court may sua sponte dismiss a complaint when the alleged facts in the complaint, taken as true, prove that the inmate failed to exhaust his administrative remedies." Custis v. Davis, 851 F.3d. 358, 361 (4th Cir. 2017); also see Banks v. Marquez, 694 Fed. Appx. 159 (4th Cir. 2017)(finding no error in the district court's decision to sua

9

sponte dismiss petitioner's petition where petitioner explicitly admitted in his petition that he failed to exhaust his administrative remedies).

The WRJ, where Plaintiff was incarcerated at the time of the facts giving rise to this civil action, is a facility operated by the West Virginia Regional Jail and Correctional Facility Authority ("WVRJCFA"), which has a grievance procedure that is outlined in a handbook of Inmate Rules and Procedures that is distributed to each inmate. The United States District Court for the Northern District of West Virginia has summarized the WVRJCFA's grievance process as follows:

> Under this procedure, inmates must first submit a grievance to the Administrator of the facility in which they are confined. Upon receipt of the grievance, the Administrator may reject the grievance if it appears on its face to have been filed in bad faith, or if other administrative procedures exist that have not been utilized. If the grievance is rejected, the Administrator must advise the inmate of the rejection. If the grievance is not rejected, the Administrator may assign a staff member to investigate the complaint. Such staff is then required to submit a written report within forty-eight (48) hours. Within two days of receipt of the written report, the Administrator must provide a written decision which identifies the action taken, the reasons for the action, and the procedures that must be followed to properly appeal the decision. If the Administrator's response is unfavorable, the inmate may appeal to the Chief of Operation within five days of the receipt of the Administrator's decision. Upon receipt of an appeal, the Chief of Operations must immediately direct the Administrator to forward copies of all information relating to the inmate's grievance within two business days. The Chief of Operations may direct an investigation of the report be conducted and a written report be submitted within 15 days. Within 10 days of receiving all of the information related to the grievance, the Chief of Operations must provide a written decision which identifies the corrective action taken or the reasons for denying the grievance. If the Chief of Operations' response is unfavorable, the inmate may appeal to the Office of the Executive Director within five days of receipt of the Chief of Operations' response. To do so, the inmate must mail to the Executive Director, copies of the original complaint and all of the responses thereto. The Office of the Executive Director must respond to an inmate's appeal within 10 days of receiving all the information. Unless the inmate has been notified of an extension of time for a response, the inmate may move to the next stage of the grievance process if the inmate does not receive a response at the expiration of the time limit at any stage of the process. The grievance process must be concluded within 60 days, inclusive of any extensions.

Chase v. Trent, 2012 WL 5845361, at * 4 (N.D.W.Va. Oct. 16, 2012)(Kaull, M.J.), report and recommendation adopted, 2012 WL 5845219 (N.D.W.Va. Nov. 19, 2012)(Keeley, J.).

In their Motion, Defendants argue that Plaintiff failed to exhaust her administrative remedies. (Document No. 42 and Document No. 43, pp. 3 – 5.) Defendants note that Plaintiff states in her Amended Complaint that she only submitted one written grievance to the "Head Staff Nurse" and the grievance was not answered. (Id.) Thus, Defendants contend that Plaintiff acknowledges her failure to exhaust. (Id.) In Response, Plaintiff merely argues that Defendants Dillon, Richardson, and Young "failed to do their jobs right." (Document No. 47.)

In her Amended Complaint, Plaintiff acknowledges that she did not fully exhaust her available administrative remedies. (Document No. 17, p. 2.) Plaintiff states that she presented facts relating to her Amended Complaint in a grievance, but she "never heard back." (Id.) Thus, it is apparent from the face of the Amended Complaint that Plaintiff failed to fully exhaust her administrative remedies prior to filing her Amended Complaint. See Custis, 851 F.3d. at 361; Banks, 694 Fed. Appx. at 160. As stated above, an inmate must first submit a grievance to the Administrator of the facility in which she is confined. Upon receipt of the grievance, the Administrator may assign a staff member to investigate the complaint and that staff member is required to submit a written report within 48 hours. Within two days of receipt of the written report, the Administrator must provide the inmate with a written decision. If the inmate does not receive a response at the expiration of the time limit at any stage of the process, the inmate may move to the next stage of the grievance process. In the instant case, it is clear from the face of Plaintiff's Amended Complaint that she failed to consider any absence of a response as a denial and proceed to the next level. Plaintiff's Amended Complaint reveals that Plaintiff decided to forego the administrative remedy process after she did not receive a timely response to her initial grievance. See Veloz v. New York, 339 F.Supp.2d 505, 516 (S.D.N.Y. 2004)(finding that inmate should not be excused from exhausting where the administrative remedy procedure offers available

alternative means of exhausting). The undersigned, therefore, respectfully recommends that Defendants' Motion be granted and Plaintiff's Amended Complaint be dismissed in view of her failure to exhaust her administrative remedies pursuant to the PLRA. The undersigned finds it unnecessary to consider the other reasons that Defendants Richardson, Dillon, and Young have submitted for dismissal of Plaintiff's Section 1983 claim.

B.  **Western Regional Jail:**

Although WRJ has not filed a motion requesting dismissal, the undersigned finds that Plaintiff's claim against WRJ should be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B). Specifically, Section 1915(e)(2)(B) provides the Court shall dismiss a claim at any time if the Court determines that the action "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." Id. As stated above, to state and prevail upon a claim under Section 1983, a Plaintiff must prove that (1) a person acting under color of State law (2) committed an act which deprived her of an alleged right, privilege or immunity protected by the Constitution or laws of the United States. The undersigned finds that the WRJ is an improper defendant. It is well recognized that a Section 1983 claim must be directed at a "person." See Preval v. Reno, 203 F.3d 821 (4th Cir. 2000)(unpublished)(finding that the Piedmont Regional Jail is not a "person" under Section 1983). In Will v. Michigan Dept. of State Police, the Supreme Court held that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983". Will v. Michigan Dept. of State Police, 491 U.S. 58, 66, 109 S.Ct. 2304, 2309, 105 L.Ed.2d 45 (1989). The holding in Will applies not only to suits against the State, but also to suits against "public entities and political subdivisions" that are an "arm or alter ego" of the State. Maryland Stadium Auth. v. Ellerbe Becket Inc., 407 F.3d 255, 260 (4th Cir. 2005)(citation omitted). It is well recognized that WVDOC is an

arm of the State and is not a "person" within the meaning of Section 1983. See Rauch v. West Virginia Divison of Corrections, 2014 WL 3732123 (S.D.W.Va. July 25, 2014)(J. Copenhaver)(WVDOC is not a "person" for purpose of Section 1983); Berry v. Rubenstein, 2008 WL 1899907, * 2 (S.D.W.Va. April 25, 2008)(J. Faber)("WVDOC is an arm of the state and is therefore immune from suit under the Eleventh Amendment"); also see Lewis v. Western Regional Jail, 2012 WL 3670393, * 5 (S.D.W.Va. July 24, 2012)(finding that the Western Regional Jail was not a "person" subject to suit under Section 1983); Webb v. Parsons, 2011 WL 2076419 (S.D.W.Va. May 6, 2011)(finding that the West Virginia Regional Jail Authority, an agency of the State of West Virginia, is immune from suit under the Eleventh Amendment); Roach v. Burch, 825 F.Supp. 116, 117 (N.D.W.Va. 1993)(stating that the West Virginia Regional Jail Authority is not a "person" under Section 1983). Furthermore, pursuant to the Eleventh Amendment, the power of the federal judiciary does not extend to suits by a citizen against his or her own state. Hans v. Louisiana, 134 U.S. 1, 9, 10 S.Ct. 504, 33 L.Ed. 842 (1980); also see Will, supra, 491 U.S. at 66, 109 S.Ct. at 2309 (Suits against a state or state agencies for monetary damages are barred by the Eleventh Amendment to the United States Constitution); Kinder v. PrimeCare Med., Inc., 2015 WL 1276748, * 2 (S.D.W.Va. March 19, 2015)(dismissing the Western Regional Jail based on Eleventh Amendment grounds). Accordingly, the undersigned finds that the WRJ must be dismissed because it is not a "person" as required by Section 1983.

**2.     Medical Negligence:**

To the extent Plaintiff is asserting a medical negligence claim, Defendants argue Plaintiff failed to comply with the requirements of the MPLA. (Document No. 42 and Document No. 43, pp. 5 – 8.) Specifically, Defendants argue that Plaintiff did not comply with the mandatory notice and screening certificate of merit requirements of the MPLA. (Id.) Plaintiff fails to address this

argument in her Response. (Document No. 47.)

To the extent Plaintiff is asserting a medical malpractice claim, the undersigned finds that such a claim should be dismissed because Plaintiff failed to comply with the prerequisites of the MPLA. Under West Virginia law, a plaintiff must satisfy certain prerequisites prior to filing suit against a health care provider. Specifically, a plaintiff must serve each defendant health care provider with a notice of claim with an attached screening certificate of merit executed under oath by a health care provider qualified as an expert under the West Virginia Rules of Evidence at least thirty (30) days prior to filing suit. W. Va. Code § 55-7B-6. If a plaintiff has insufficient time to obtain a screening certificate of merit prior to the expiration of the applicable statute of limitations, the plaintiff must comply with the provisions of W. Va. Code § 55-7B-6(b) "except that the claimant or his or her counsel shall furnish the health care provider with a statement of intent to provide a screening certificate of merit within sixty days of the date the health care provider receives the notice of claim." W. Va. Code 55-7B-6(d). Compliance with West Virginia Code § 55-7B-6 is mandatory prior to filing suit in federal court. Stanley v. United States, 321 F.Supp.2d 805, 806-07 (N.D.W.Va. 2004); also see Starns v. United States, 923 F.2d 34 (4th Cir. 1991)(holding that Virginia's medical malpractice liability cap applies to claims brought against the United States under the FTCA). West Virginia Code § 55-7B-6(c), however, provides that no screening certificate of merit is necessary where "the cause of action is based upon a well-established legal theory of liability which does not require expert testimony supporting a breach of the applicable standard of care." W. Va. Code § 55-7B-6(c). If a plaintiff proceeds under this subsection, the Plaintiff must "file a statement specifically setting forth the basis of the alleged liability of the health care provider in lieu of a screening certificate of merit. Id.

There is no indication that Plaintiff has complied with the prerequisites of the MPLA.

14

Further, Plaintiff does not claim that she has filed a statement in lieu of a screening certificate of merit because her cause of action is based upon a well established legal theory of liability. To the extent Plaintiff is asserting a medical negligence claim, the undersigned respectfully recommends that Defendants' Motion be granted and Plaintiff's claim be dismissed.

## PROPOSAL AND RECOMMENDATION

The undersigned therefore respectfully **PROPOSES** that the District Court confirm and accept the foregoing findings and **RECOMMENDS** that the District Court **GRANT** Defendants Richardson, Dillon, and Young's Motion to Dismiss Complaint and Alternative Motion for Summary Judgment (Document No. 42), **DISMISS** Plaintiff's Amended Complaint (Document No. 17) as to all Defendants, and remove this matter from the Court's docket.

The Plaintiff is hereby notified that this "Proposed Findings and Recommendation" is hereby **FILED**, and a copy will be submitted to the Honorable United States District Judge Robert C. Chambers. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rule 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen (14) days (filing of objections) and three (3) days (if received by mail) from the date of filing of this Findings and Recommendation within which to file with the Clerk of this Court specific written objections identifying the portions of the Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984). Copies of such objections shall be served on opposing parties, District Judge

Chambers and this Magistrate Judge.

The Clerk is requested to send a copy of this Proposed Findings and Recommendation to Plaintiff, who is acting *pro se*, and counsel of record.

Date: April 30, 2020.

Omar J. Aboulhosn
United States Magistrate Judge